IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2020

**TODD RANDOLPH NAPIER v. KRISTEN C. NAPIER**

**Appeal from the Chancery Court for Williamson County**
**No. 31211     James G. Martin, III, Judge**

_____

**No. M2019-00978-COA-R3-CV**

_____

Father appeals the trial court's denial of his motion to set aside a default judgment. Discerning no abuse of discretion in the trial court's decision, we affirm and remand for a determination of Mother's fees incurred in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS, and THOMAS R. FRIERSON, II, JJ., joined.

Kevin W. Teets, Jr., Nashville, Tennessee, for the appellant, Todd Randolph Napier.

William Phillip Holloway, Franklin, Tennessee, for the appellee, Kristen C. Napier.

**OPINION**

**BACKGROUND**

The parties, Plaintiff/Appellee Kristen C. Napier (Hopkins) ("Mother") and Defendant/Appellee Todd Randolph Napier ("Father") were divorced in 2005. At that time, a permanent parenting plan was entered naming Mother the primary residential parent and allowing Father visitation. The genesis of this appeal began on January 7, 2015, when Father filed a petition to enforce the parties' permanent parenting plan. According to the petition, following a dispute between the parties,[1] the parties entered into an agreed order modifying the parenting plan in certain respects.[2] According to Father, however, Mother

_____

[1] The allegations related to the dispute are of a sensitive nature. Because the allegations are not relevant to this appeal, we decline to detail the allegations in order to protect the privacy of the parties.

[2] Neither the initial parenting plan nor the agreed order modifying it are included in the technical record.

was misconstruing and violating the agreed order, by, inter alia, denying Father visitation and contact with the children. Additionally, Father asserted that the agreed order was intended to only be a temporary modification of the parenting plan. As such, Father asked that the agreed order be declared void and the original permanent parenting plan be reinstated, that Mother be held in contempt, and that child support be recalculated. On February 4, 2015, Father filed a motion to have his petition heard on February 26, 2015. At the time of these filings, Father indicated that he resided on Chelsey Cove in Franklin, Tennessee.

On February 13, 2015, Mother entered a limited appearance for the purpose of filing a motion to dismiss Father's motion to hear the petition. Mother asserted that Father had failed to issue process and serve Mother with the petition. On March 13, 2015, the trial court found that Mother's motion was well-taken, as Father had not served Mother with the petition. In response, Father filed a second motion for his petition to be heard on April 23, 2015. Mother again objected on the basis of lack of service.

On July 27, 2015, Father, now represented by counsel, filed another petition; this one specifically for the purpose of modifying child support. Therein, Father alleged that his income had substantially decreased due to a decrease in business revenue, while Mother's income had increased. Mother filed an answer to Father's petition on August 26, 2015. Mother admitted that she was not employed at the time of the divorce and that she was now employed. Mother denied, however, that a significant variance existed. Mother also filed a counter-petition to modify child support on the basis that Father spends zero days with the children, rather than the eighty days originally awarded to Father. The counter-petition also alleged that Father "quit his prior job and any such voluntary action by Father which results in a decrease in his income should not be considered for purposes of modifying child support." Mother also filed a petition for civil contempt against Father for non-payment of child support from August 2015 to February 2016. Mother also sought attorney's fees pursuant to the parties' marital dissolution agreement ("MDA").

On October 5, 2016, the trial court entered an order allowing Father's counsel to withdraw. The certificate of service indicates that the order was mailed to Father at 414 Brick Path Lane, #207, Franklin, TN 37064. On January 17, 2017, Mother filed a second motion for civil contempt, this time alleging that Father failed to pay child support from March 2016 to January 2017. Mother's petition was mailed to Father at his Brick Path Lane address. At some point, Mother also filed a motion for sanctions related to Father's failure to respond to discovery.[3]  On April 3, 2017, Father, having retained substitute counsel, filed a response to Mother's requests for contempt and sanctions, alleging that his non-payment of child support was due to financial strain and that many of his legal documents were illegally taken.

---

[3] The motion for sanctions is not in the appellate record but is referenced in a later order by the trial court.

Soon, however, Father's second attorney was allowed to withdraw. The October 18, 2017 order allowing the withdrawal specifically noted that Father would be given thirty days beginning on October 6, 2017 to retain new counsel "or shall proceed pro se." The order of withdrawal stated that it was served on Father at his email address, toddnapier19@yahoo.com. No physical address was listed on this order for Father.

On May 7, 2018, Mother filed a motion for a default judgment against Father and to set a final hearing. Therein, Mother noted that Father had been ordered to complete discovery by May 1, 2018, or else "a default judgment shall be entered against Father relative to Mother's pending Petition." Mother alleged, however, that Father has not complied. As such, Mother asked that a default judgment be entered against Father. Mother's motion stated that it was served on Father in two ways: (1) by mail at the Brick Path Lane address; and (2) by email at todd@getresultsmedia.com.

The trial court entered an order on or about June 1, 2018, noting that Father did not respond to Mother's discovery requests or motion for default judgment. In addition, Father was not present for the hearing on the motion for default. The trial court found that Father failed to comply with its prior order requiring Father to respond to discovery. As such, the trial court granted Mother's motion for default and set a final hearing for July 27, 2018. The certificate of service indicated that the motion was sent to Father by mail and email at the above addresses.

On or about August 8, 2018, the trial court entered an order disposing of the pending requests filed in the case. Because Father failed to appear for the final hearing, the trial court dismissed Father's petition to enforce the parenting plan and his petition to modify child support. The trial court further noted that at the final hearing, Mother elected not to proceed on her petition for contempt, but to simply seek a judgment for the arrearage. As such, the trial court dismissed Mother's contempt petitions. The trial court found that a significant variance existed and modified Father's child support. Moreover, the trial court found that Father "has woefully failed to" pay child support, and entered an arrearage judgment in Mother's favor for $50,182.00. The trial court awarded Mother interest on the arrearage, which the trial court reduced to a $5,356.26 judgment. Finally, the trial court awarded Mother attorney's fees in the amount of $8,255.00. Again, the certificate of service on the order from Mother's counsel indicates that it was sent to Father at the Brick Path Lane address and by email.[4]

---

[4] The order, like some of the other orders in this record, contains a certificate of service from both counsel and the clerk. *See generally* Tenn. R. Civ. P. 58 (requiring that an order be signed by both parties or that it contain a certificate of service from counsel or the clerk). The certificate of service from the clerk is somewhat ambiguous because despite Father's physical address and email address being listed, no box is checked regarding the type of delivery:

On March 8, 2019, Father, proceeding pro se, filed a motion for relief from the trial court's final order. Therein, Father alleged that Mother was aware of Father's correct physical address and email address, but she "purposely sent notice to the wrong addresses, in order to achieve a default judgment[.]" The motion alleged that the correct email address was used in previous court documents, including the order allowing Father's most recent counsel to withdraw. Moreover, Father alleged that he informed Mother of his new mailing address by phone. As such, Father argued that the default judgment was void and should be set aside pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. This motion indicated that Father's current address was 2009 Cypress Way, Pleasant Hill, MO 64080 and that his email address was toddnapier19@yahoo.com.

Mother responded in opposition to Father's motion on April 25, 2019, contending that she sent copies of all motions and orders to Father's last known address. Mother included various letters sent by her counsel and by Father to show that she used his most recent addresses; the correspondence from Father, however, occurred in 2015. Mother sent this response to Father at the addresses he listed on his Rule 60.02 motion. Mother later filed a motion requesting that she be awarded attorney's fees for defending against the Rule

---

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing ORDER has been forwarded:

____ U.S. Mail
____ E-mail
____ Facsimile
____ Hand-delivery

Todd Napier
414 Brick Path Lane, #207
Franklin, TN 37064
todd@getresultsmedia.com

This the 31 day of July, 2018.

_____
WILLIAM P. HOLLOWAY

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing ORDER has been forwarded:

____ U.S. Mail
____ E-mail
____ Facsimile
____ Hand-delivery

Todd Napier
414 Brick Path Lane, #207
Franklin, TN 37064
todd@getresultsmedia.com

Will Holloway
509 New Hwy 96 W, Ste. 201
Franklin, TN 37064

This the 9 day of August, 2018.

_____
CLERK

Because Rule 58 requires only a certificate of counsel or a certificate of the court clerk, Father does not appear to argue that Rule 58 was violated. Rather, the only argument Father makes on appeal concerns the addresses where the papers were sent.

60.02 motion.

A hearing was held on Father's motion on April 30, 2019. At the start of the hearing, counsel for Mother framed Father's motion as seeking to set aside the judgment on the basis of fraud. Father testified upon his own behalf; much of his testimony occurred through questioning from the trial court or cross-examination. Father testified that following the October 18, 2017 order of withdrawal of his second counsel, he received no further notice of any ongoing proceedings in the trial court. Father asserted that Mother was on notice by this order that Father's email address was no longer the Get Results Media address, but rather toddnapier19@yahoo.com. Father testified that he still used this email address.

Father also testified that his physical address changed around the time that this order was entered. According to Father, in October 2017 when the order was entered, he was living with his parents at a Wiregrass Lane address in Franklin, Tennessee, which was his permanent address.[5] In November 2017, however, he moved to Missouri. For a time, he lived on Cypress Way in Missouri. By March 2019, however, Father had moved to a new address in Missouri at Buckeye Lane. Father later admitted that he had moved several other times during the pendency of the court proceedings, including to Florida.

When asked whether Father ever formally updated the trial court with his changed address, Father admitted that he had not. Father claimed to have updated Mother with his address through a financial aid parent portal and through a phone call to Mother. Father excused his failure to update the court with his address due to his belief that the trial court proceedings had ended. Father also admitted that he had not paid child support as alleged in Mother's petition and conceded that he had no justifiable excuse for his failure to do so other than as "ransom" to see his children. Mother moved for a directed verdict[6] at the close of Father's proof, which the trial court granted.

The trial court entered an order denying Father's Rule 60.02 motion on or about May 9, 2019. Therein, the trial court stated that Father's motion sought to avoid the judgment on the basis of fraud. The trial court, however, found that Father failed to present evidence to support a claim of fraud. Specifically, the trial court noted that Father admitted that the last address on file with the court was at Brick Path Lane, which is the same address where Mother sent all documents. The trial court also found that Father's testimony that he believed the proceedings were not ongoing after the withdrawal of his last attorney was not credible. The trial court further noted that Father acknowledged that he had failed to pay

---

[5] None of the papers included in the technical record ever use a Wiregrass Lane address for notice to Father.

[6] Directed verdicts are applicable only in jury trials. ***Burton v. Warren Farmers Co-op.***, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) ("[M]otions for directed verdicts have no place in bench trials[.]"). Mother's motion was a motion for involuntary dismissal. Tenn. R. Civ. P. 41.02(2) (allowing the defendant to move for an involuntary dismissal following the plaintiff's presentation of proof).

support with justification and that he had not exercised any parenting time since January 2015. Finally, the trial court noted that Father did not challenge any of the trial court's previous findings regarding the income of the parties. As such, the trial court found that Father failed to meet his burden to show fraud or that the wrong conclusion was reached in the original order. Thus, the trial court denied Father's Rule 60.02 motion.[7] The trial court reserved the issue of attorney's fees, allowing Mother's counsel to file an affidavit. The trial court ultimately awarded Mother $3,555.00 in attorney's fees. Father thereafter timely appealed.

### STATEMENT OF ISSUES

Father raises three issues, which we have combined and restated into two issues:

1. Whether the trial court abused its discretion in failing to set aside the default judgment and final orders pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure.
2. Whether the trial court abused its discretion in awarding Mother attorney's fees incurred in defending against the Rule 60.02 motion.

Mother contends that the trial court correctly denied Father's post-judgment motion and awarded her attorney's fees. In the posture of appellee, she also seeks an award of attorney's fees incurred on appeal.

### DISCUSSION

### I.

The crux of this case is the trial court's decision to deny Father's motion for relief from the final judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02 provides, in relevant part, as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or

---

[7] This order and other papers filed in the trial court following the Rule 60.02 hearing were served at the physical address that Father had used in his Rule 60.02 motion. At the rule 60.02 motion, however, Father testified that he had recently moved. Regardless, these papers also indicate that they were served on Father via his correct email address. Indeed, Father insists in his brief that this was "the best way" to provide notice to Father. As such, Father does not assert on appeal that he lacked actual notice of these filings.

it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. . . .

According to our Supreme Court,

> The general purpose of Rule 60.02 is "'to alleviate the effect of an oppressive or onerous final judgment.'" *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992) ). Rule 60.02 is equally aimed at striking a "proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Thus, relief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991). Instead, relief is appropriate only in those relatively few instances that meet the criteria of the rule. *Id.*
>     Rule 60.02 has been described as an "escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn.1990). Out of respect for the finality afforded to legal proceedings, this "'escape valve' should not be easily opened." *Toney*, 810 S.W.2d at 146. Accordingly, a party seeking relief from a judgment under Rule 60.02 bears the burden of proving that it is entitled to relief by clear and convincing evidence. *McCracken*, 958 S.W.2d at 795.

*Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 336 (Tenn. 2010). "A Rule 60.02 motion for relief from a judgment is within the sound discretion of the trial court and the court's ruling on a Rule 60.02 motion may not be reversed on appeal unless it is determined that the court abused its discretion." *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 92 (Tenn. Ct. App. 2000) (citations omitted). Under this standard, we are not permitted to "substitute [our] judgment for that of the trial court[,]" and the trial court's ruling will be upheld "unless it affirmatively appears that the decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *Battleson v. Battleson*, 223 S.W.3d 278, 283 (Tenn. Ct. App. 2006).

A major contention in this case involves which of the bases for relief set out in Rule 60.02 were actually relied upon by Father. In his motion, Father alleged that Mother "purposefully" sent mailing to an incorrect address in order to obtain a default judgment against Father. As a result, Father's motion argued that the judgment against him was

"rendered VOID[.]" At the hearing on the motion, counsel for Mother therefore characterizes Father's claim as falling under section (2) for fraud. In denying Father's motion, the trial court expressly ruled that Father did not meet his burden to show fraud by clear and convincing evidence.

On appeal, Father asserts that the trial court was essentially led astray by Mother's counsel into considering Father's motion only on the basis of fraud. Instead, Father now argues that his motion alleged either excusable neglect under section (1) or "any other reason justifying relief from the operation of the judgment" under section (5).[8] In making this argument, Father appears to concede that he cannot meet his burden to show fraud in this case.

In deciding this issue, we must keep in mind that while Father is represented by counsel in this appeal, he was proceeding pro se at the time he filed his Rule 60.02 motion. As we have previously explained,

> Parties who decide to represent themselves are entitled to equal treatment by the court. *Murray v. Miracle*, 457 S.W.3d 399, 402 (Tenn. Ct. App. 2014). The court should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. *Id.* However, the court must also be mindful of the boundary between fairness to the pro se litigant and unfairness to the pro se litigant's adversary. *Id.* While the court should give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs, it must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

*Lacy v. Mitchell*, 541 S.W.3d 55, 59 (Tenn. Ct. App. 2016).

We must agree with Mother that even a cursory review of Father's motion supports an interpretation that fraud was at issue. Indeed, Father expressly asserted that Mother had misled the trial court as to Father's current address in order to prevent Father from mounting a defense to her allegations. These allegations clearly implicate fraud. *See generally Duncan v. Duncan*, 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (holding that in order to prove fraud under Rule 60.02, the movant must present clear and convincing evidence of "an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights") (citation omitted).

---

[8] Despite the language of his motion, it does not appear that Father alleges that the judgment is void.

The Tennessee Supreme Court has held that "[t]o obtain relief under Rule 60.02, the moving party 'must describe the basis of relief with specificity[.]'" ***Hussey v. Woods***, 538 S.W.3d 476, 483 (Tenn. 2017) (quoting ***Minor Miracle Prods., LLC v. Starkey***, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *7 (Tenn. Ct. App. Jan. 12, 2012)). Here, the only allegations that arguably meet this requirement are Father's allegations as to Mother's purposeful conduct. No specific sections of Rule 60.02 are cited; certainly neither excusable neglect, mistake, nor "any other reason justifying relief from the operation of the judgment" are mentioned in Father's motion. Thus, even taking into account that Father was self-represented in the trial court, we cannot find that the trial court abused its discretion in considering Father's motion as alleging fraud. And as Father has not argued that the trial court abused its discretion in finding Father's evidence of fraud insufficient, the trial court's ruling can be affirmed on this basis alone.

Nevertheless, in an abundance of caution, we have reviewed the additional bases for relief cited by Father in his appellate brief. *Cf.* ***Pryor v. Rivergate Meadows Apartment Assocs. Ltd. P'ship***, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009) (reviewing a motion under Rule 60.02 even though the motion did not specify this ground for relief). After a thorough review, however, we conclude that neither necessitated relieving Father of the final judgment in this case. We begin with mistake and excusable neglect under Rule 60.02(1).

Courts are often faced with motions for relief from default judgments under Rule 60.02(1). According to a prior opinion of this Court:

> Three factors must be considered when determining if a default judgment should be vacated under Rule 60.02(1): "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party would be prejudiced if relief were granted." ***Henry v. Goins***, 104 S.W.3d 475, 481 (Tenn.2003) (citing ***Tenn. Dep't of Human Servs. v. Barbee***, 689 S.W.2d 863, 866 (Tenn.1985)). Again, the trial court "is in the best position to assess the various factors that should be considered in determining whether a default judgment should be vacated." ***Barbee***, 689 S.W.2d at 867.
>
> These factors-willfulness, meritorious defense, and prejudice-have not replaced the Rule 60.02(1) reasons of mistake, inadvertence, surprise or excusable neglect. ***Bowers v. Gutterguard of Tenn., Inc.***, No. M2002-02877-COA-R3-CV, 2003 WL 22994302, at *7 (Tenn. Ct. App. Dec. 17, 2003). Specifically, Tennessee courts have wrestled with the apparent incompatibility of "excusable neglect" and "willfulness." A recent Tennessee decision explained the relationship as follows: "[t]his approach has been to find that negligence, a form of neglect, may be excusable and to employ wilfulness as a critical factor in distinguishing neglect that is excusable from that which is not." ***World Relief Corp. of Nat'l Ass'n of Evangelicals v. Messay***, No. M2005-01533-COA-R3-CV, 2007 WL 2198199, at *7 n. 9

(Tenn. Ct. App. July 26, 2007).

*Pryor*, 338 S.W.3d at 886.

As an initial matter, Mother asserts that Father did not meet his burden to show that his conduct was excusable. Father, of course, asserts that his behavior was not willful, but rather excusable neglect. Here, there is some reasonable dispute as to the email address used for notice, as Mother admitted in some of her pleadings that Father was no longer employed with his prior employer, which presumably provided his Get Results Media email address. However, the motions and orders in the record were not served solely via email, but also to Father's address at Brick Path Lane in Franklin, Tennessee. Father agreed at trial that Brick Path Lane was "the last address that appears in [the trial] [c]ourt's file" and that he never updated the court with any change of address.[9] Rule 5.02(1) of the Tennessee Rules of Civil Procedure specifically authorizes service of papers "by delivering to him or her a copy of the document to be served, or by mailing it to such person's last known address[.]"

Father asserts, however, that he moved prior to the filing of the motion for default judgment and that his failure to update the court was a mistake that should not prevent him from participating in the proceedings. Thus, Father essentially asserts that even though Mother served him via the address last known to the court to be his, the judgment Mother obtained should be set aside due to mistake. From our review, Father's failure to act in this case involved more than simple negligence. Indeed, he admitted at trial that he had moved no less than six times between three different states over the course of the trial court proceedings. Despite moving multiple times even after the withdrawal of his attorney in October 2017, he never made a formal, written effort to update his address following his move from Brick Path Lane. Specifically, Father was asked about his move immediately following the October 2017 order, when he contends he began to not receive notices:

> Q. Now, when you moved to Missouri in November of '17, did you advise the Court that you had changed your address?
> A. I did not advise the Court, no, sir.

Rather, Father contended that Mother should have obtained notice through a financial aid parent portal where he updated his address.[10] Tennessee law, however, makes it incumbent on pro se litigants to update their addresses with the court to ensure that they receive proper

---

[9] Likewise, in his brief, Father concedes that he never informed the trial court that his address had changed.

[10] In the hearing, Father also claimed to have called Mother. When Mother introduced phone records showing that Father had not called her, Father shifted to state that he contacted Mother through the child's phone. In his appellate brief, Father does not mention this alleged phone contact. As such, it appears that he has abandoned his claim that he provided Mother with notice of one of his new addresses via a phone call.

notice:

> [L]itigants have an affirmative duty to notify the clerk of court, and counsel of record, of a new address if it changes during the course of litigation. This applies to pro se litigants and attorneys of record, and a party or their attorney who fails to fulfill this obligation is the author of his own misfortune and cannot be heard to complain that the trial court erred when it proceeded in his absence.

*Tomlin v. Baxter*, No. M2014-01746-COA-R3-CV, 2015 WL 7749064, at *7 (Tenn. Ct. App. Nov. 30, 2015) (internal citations and quotation marks omitted) (citing *Reynolds v. Battles*, 108 S.W.3d 249 (Tenn. Ct. App. 2003) ("If a litigant proceeding pro se relocates during the course of litigation, he is encumbered with the responsibility of notifying the clerk of the court of his new address. Without such notification, it is virtually impossible for the clerk to assure that subsequent notices will be received."); *Schrader v. Schrader*, No. E2005-02641-COA-R3-CV, 2007 WL 27118, at *6 (Tenn. Ct. App. Jan. 4, 2007) ("[W]e believe Husband, who initiated this lawsuit, had an affirmative obligation to keep the trial court and, when he had one, his attorney informed of his current whereabouts. Husband is the author of his own misfortune and cannot be heard to complain that the trial court erred when it proceeded in his absence.")). Here, Father admittedly failed to meet this obligation.

Father explained his failure to give notice to the court of his change in address because he "did not know there was any pending litigation after [Father's second attorney] resigned." The trial court found that this claim was not credible, and we must agree. *See Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998) (citing *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)) ("[T]he trial court is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal."). The October 2017 order of withdrawal expressly provides for a period of time in which Father was to retain substitute counsel, otherwise he is ordered to "proceed pro se." Father does not deny that he received notice of this order. It therefore put Father on notice that there were ongoing proceedings in the trial court. In spite of this notice, Father went months before taking any action to learn that Mother had been granted a judgment in her favor in his absence. Under these circumstances, we have difficulty seeing Father's behavior as excusable. Instead, it appears that Father was the "author of his own misfortune" in this case. *Schrader*, 2007 WL 27118, at *6.

Even setting aside the issue of excusable neglect, however, another issue supports the denial of Father's Rule 60.02 motion. "The Tennessee Supreme Court has found that excusable neglect alone is insufficient to set aside a default judgment; the movant must also demonstrate a meritorious defense to the plaintiff's claim" unless the judgment is

void.[11] *Id.* at 887 (citing *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn. 1984)). "A conclusory statement, such as '[the movant] believes itself to have a good and valid defense,' is insufficient." *Id.* at 887 (citing *Patterson*, 665 S.W.2d at 101). Father's motion did not specify that he had a meritorious defense. Moreover, the proof presented at the Rule 60.02 motion supports that the trial court's finding that Father had no meritorious defense to Mother's allegations. For one, Father admitted that he no longer exercised any parenting time with the children and that he had not paid child support since January 2015. He further admitted that "there's no excuse" for his failure to pay and that he had "no reason not to pay child support." Father also indicated that he refused to pay child support because he was not allowed to visit his children, a strategy that Father characterized as a "ransom." A lack of visitation, however, it does not provide justification for failure to support a child. *See In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005) ("The parental duty of visitation is separate and distinct from the parental duty of support."). Father also put on no proof, even by unsupported testimony, concerning a reduction in his income or that the proof Mother had previously presented as to her income was in any way incorrect. Thus, an independent review of the evidence even without any presumption in favor of the trial court's ruling leads this Court to conclude that Father failed to make out a meritorious defense to the judgment. His request for relief under Rule 60.02(1) must therefore fail.

Finally, Father asserts that the trial court should have granted relief under Rule 60.02(5), which is construed narrowly. *Wilkerson v. PFC Global Group, Inc.*, No. E2003-00362-COA-R3-CV, 2003 WL 22415359, at *9 (Tenn. Ct. App. Oct. 23, 2003) (citing *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 625 (Tenn. 2000)). "Despite its broad language . . . [t]he standards of Rule 60.02(5) are even more demanding than those applicable to the other grounds for Rule 60.02 relief." *Id.* (citing *NCBN Nat'l Bank of North Carolina v. Thrailkill*, 856 S.W.2d 150, 154 (Tenn. Ct. App. 1993); *Duncan v. Duncan*, 789 S.W.2d 557, 564 (Tenn. Ct. App. 1990); *Tenn. Dept. of Human Serv's v. Barbee*, 689 S.W.2d 863, 866 (Tenn. 1985)). As such, "the reasons for granting relief from a judgment under Tenn. R. Civ. P. 60.02(5) must be of 'overriding importance.'" *Delong v. Vanderbilt Univ.*, 186 S.W.3d 506, 512 (Tenn. Ct. Ap. 2005) (citing *Banks v. Dement Constr. Co.*, 817 S.W.2d 16, 19 (Tenn. 1991)). A party seeking relief under Rule 60.02(5) therefore bears a "heavy burden[.]" *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992).

Father's efforts to obtain relief under Rule 60.02(5) are, respectfully, insufficient. "Relief under Rule 60.02(5) is only appropriate in cases of overwhelming importance or in cases involving extraordinary circumstances or extreme hardship." *Federated Ins. Co. v.*

---

[11] Again, Father does not assert on appeal that the judgment was void. *Cf. Pryor*, 338 S.W.3d 887 n.1 (noting that the movant did not argue that the judgment was void and therefore declining to address that issue). *But see generally Reynolds v. Battles*, 108 S.W.3d 249, 253 (Tenn. Ct. App. 2003) (holding that where a party failed to properly notify the opposing party of an application for default judgment as required by Rule 55.01 of the Tennessee Rules of Civil Procedure, the movant was not required to show a meritorious defense).

*Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993)). Father's only argument that this case meets this standard is that "[t]his case is a prime example of a litigant who made a mistake and is not given justice, but rather punishment for not understanding the proper mechanics of notifying the court of an address change." This argument is unpersuasive. First, Father's testimony shows that he made no attempt to inform the court of his multiple moves so as to ensure that he received notice. His excuse for this failure, that the proceedings had ended, was easily contradicted by the record. Moreover, this argument, as well as others in this portion of Father's brief, characterizes the actions of the parties as "mistake[s]." Mistakes, however, are governed by Rule 60.02(1). Rule 60.02(5), however, "generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 128 (Tenn. 2013) (citing *Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000)). On this basis, this Court has previously denied a request for relief based on Rule 60.02(5) when the movant "fail[e]d to demonstrate . . . any way in which the facts underlying her request for relief under Rule 60.02(5) differ from the facts relied upon in support of her request for relief under Rule 60.02(1)." *Holiday*, 42 S.W.3d at 94. Here, Father's contentions with regard to both Rules 60.02(1) and 60.02(5) rely on his belief that a mistake occurred preventing him from being properly notified of Mother's filings. As we have concluded that Father's request for relief under Rule 60.02(1) fails due to his failure to demonstrate a meritorious defense, so too must his request for relief under Rule 60.02(5).

## II.

As his final issue, Father raised the trial court's decision to award Mother her attorney's fees. The argument section of Father's appellate brief, however, contains no argument concerning the award of attorney's fees. Rather, Father's brief discussed his issue regarding the attorney's fees in two places. First, in the summary of the argument, Father asserts that "the Court should reverse the trial court's Order failing to set aside the trial court's final orders and award of the Mother's attorney's fees and remand the case to the trial court for further proceedings." In the conclusion, Father again asserts that "the Court should reverse and remand the lower Court's judgment, including the award of attorney's fees and allow the Father to move forward to trial." Father also contends that he should be awarded attorney's fees incurred on appeal.

Father's arguments concerning attorney's fees are deficient. First, arguments that are designated as issues but not argued in the argument sections or bodies of briefs are waived. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("[W]hen a party raises an issue in its brief, but fails to address it in the argument section of the brief, we consider the issue to be waived.") Moreover, arguments that are merely skeletal or not properly supported by citation to authority are also waived. *See Sneed v. Bd. of. Prof. Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or

arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived."). Thus, Father's requests concerning attorney's fees are waived. The trial court's decision to award Mother attorney's fees incurred in the trial court is therefore affirmed.

Mother, however, did both designate as an issue her request for attorney's fees incurred on appeal, as well as argue this issue in the body of her brief. Specifically, Mother seeks attorney's fees on statutory grounds under Tennessee Code Annotated section 27-1-122[12] and section 36-5-103(c).[13] Fees under both statutes are discretionary. *See* Tenn. Code Ann. § 36-5-103(c) (noting that fees "may be . . . allowed in the court's discretion"); ***Chiozza v. Chiozza***, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009) ("The decision to award damages for the filing of a frivolous appeal [under section 27-1-122] rests solely in the discretion of this Court."). Although Mother prevailed in this appeal, we cannot conclude that Father's appeal was frivolous or taken solely for delay. Tenn. Code Ann. § 27-1-122.

We agree, however, that Mother is entitled to an award of fees under section 36-5-103(c).[14] Section 36-5-103(c) provides that the prevailing spouse may recover attorney's fees in "any . . . proceeding to enforce, alter, change, or modify . . . child support." Here, Father's Rule 60.02 motion was an attempt to avoid the child support modification and arrearage judgment that had been entered by the trial court. Father cites no law indicating that the fact that this case had its genesis as a Rule 60.02 motion prevents application of section 36-5-103(c). *Cf.* ***Spigner v. Spigner***, No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *13 (Tenn. Ct. App. Dec. 8, 2014) (awarding wife some attorney's fees under section 36-5-103(c), but denying fees related to a Rule 60.02 motion because wife did not prevail in that motion).

We therefore must determine whether the equities of this case favor an award to Mother. In determining whether to award fees we therefore consider "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." ***Id.*** at *13 (quoting ***Parris v. Parris***, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at * 13 (Tenn. Ct. App. Sept. 18, 2007). Here, Mother was clearly successful in her effort to resist Father's motion to set aside the child support

---

[12] Section 27-1-122 provides for an award of attorney's fees incurred in defending against a frivolous appeal.

[13] Section 36-5-103(c) provides that prevailing party may be awarded attorney's fees "from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of . . . . child support[.]"

[14] Mother sought attorney's fees pursuant to the parties' MDA in the trial court, which may result in a non-discretionary award of attorney's fees depending on the language of the MDA. *See generally* ***Eberbach v. Eberbach***, 535 S.W.3d 467 (Tenn. 2017). Mother, however, did not assert the MDA as a basis for attorney's fees in this appeal. As such, we resolve Mother's request solely on the basis of the statutes cited.

judgment. While nothing indicates that Father sought this appeal in bad faith, we have concluded that it was his own actions that led to the default judgment against him that he now seeks to avoid. Moreover, the judgment of the trial court set Father's income far above Mother's, and Father offered no testimony at the Rule 60.02 hearing to demonstrate a lower income. Finally, we note that Father admitted at the hearing on his Rule 60.02 that he had "no reason" not to pay child support except as a "ransom" to Mother. Thus, Father admitted that he willfully deprived Mother of child support for a considerable period of time. Father then abandoned the proceedings even though he was on notice that they were continuing, moved on more than one occasion without informing the court, and months later sought to set aside a judgment against him for which he largely admitted he had no substantive defense. Under these circumstances, we conclude that Mother is entitled to her reasonable attorney's fees incurred on appeal. Accordingly, we remand this case to the trial court for a determination of Mother's reasonable attorney's fees incurred on appeal.

## CONCLUSION

The judgment of the Williamson County Chancery Court is affirmed, and this matter is remanded the for all further proceedings as may be necessary and consistent with this Opinion, as well as for a determination of Mother's reasonable attorney's fees incurred in this appeal. Costs of this appeal are assessed to Appellant Todd Randolph Napier, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE